IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>REKHI,<br><br>　　　　Defendant. | Case No. 19-cr-00180-CRB-1<br><br>**ORDER DENYING MOTION FOR A REDUCED SENTENCE UNDER 18 U.S.C. § 3582(C)(1)(A)** |

Defendant Raminder Rekhi has moved for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). See Mot. (dkt. 35). The Court denies Mr. Rekhi's motion because (1) he has not shown that extraordinary and compelling circumstances warrant a reduced sentence, and (2) the 18 U.S.C. § 3553(a) factors do not support a reduced sentence. The Court determines that there is no need for oral argument.

**I.    BACKGROUND**

On November 13, 2019, Mr. Rekhi pleaded guilty to one count of theft, embezzlement, or misapplication of bank funds in violation of 18 U.S.C. § 656. See Judgment (dkt. 34) at 1. Mr. Rekhi committed this offense as a Business Development Officer at Wells Fargo Bank. See Plea Agreement (dkt. 16) at 2. Mr. Rekhi tricked a married couple into depositing $3.5 million into bank accounts that Mr. Rekhi controlled; the couple believed they were depositing the money into high-interest Wells Fargo Certificates of Deposit (CDs). Id. at 3. With the money, Mr. Rekhi made loans to three other individuals. Id. at 4. In short, Mr. Rekhi used the couple's money as capital to operate his own illegitimate banking business.

On September 9, 2020, the Court sentenced Mr. Rekhi to 18 months imprisonment

followed by three years of supervised release.  See Judgment at 2–3.  The Court ordered Mr. Rekhi to self-surrender on January 19, 2021.  Id. at 2.  The Bureau of Prisons has designated the minimum-security camp at FCI-Sheridan as Mr. Rekhi's facility.  See Opp. (dkt. 40) at 15.

On December 22, 2020, Mr. Rekhi moved for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A).  See Mot. at 19.  The Court approved the parties' stipulation to a briefing schedule and to a modified surrender date of February 26, 2021.  See Order Granting Stip. (dkt. 38) at 3.  Mr. Rekhi argues that his hypertension, obesity, hypercholesterolemia, and sleep apnea—when considered in the context of the COVID-19 pandemic—constitute extraordinary and compelling reasons to reduce his sentence.  See Mot. at 12–16.  Mr. Rekhi is 41 years old.  See Revised PSR (dkt. 32) at 2.

## II.    LEGAL STANDARD

The Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., does not generally permit federal courts to "modify a term of imprisonment once it has been imposed." Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress has provided certain exceptions to that rule.  As relevant here, a court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) if certain procedural requirements are met and if "extraordinary and compelling reasons warrant such a reduction."

Before the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, a defendant could not bring a motion for compassionate release under § 3582(c).  Under the original compassionate release framework, enacted as part of the Comprehensive Crime Control Act of 1984, only the Director of the Bureau of Prisons could move for compassionate release on a defendant's behalf.  See 18 U.S.C. § 3582(c)(1)(A) (2017).

But effective December 2018, the First Step Act permits a defendant to move for relief under § 3582(c)(1)(A) if the defendant satisfies the statute's exhaustion requirements.  See First Step Act § 603(b)(1).  The defendant may bring a motion only once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of

2

Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act did not alter the original framework's requirements that a court consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for a reduced sentence, see 18 U.S.C. § 3582(c)(1)(A), and that any sentence reduction under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A).

Before the First Step Act enabled defendants to bring their own motions for compassionate release under § 3582(c)(1)(A), the Sentencing Commission promulgated a policy statement enumerating circumstances constituting "extraordinary and compelling reasons" to reduce a sentence, U.S.S.G. § 1B1.13 cmt n.1, and directing that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2). The policy statement refers to motions brought by the Director of the Bureau of Prisons, and not to motions brought by defendants, as defendants could not bring such motions when the policy statement was last amended. See U.S.S.G. § 1B1.13.

Because the policy statement has not been updated or modified since Congress enacted the First Step Act, it is not obvious whether it applies to motions brought by defendants. Several U.S. Circuit Courts have held that because the policy statement refers only to motions brought by the director of the Bureau of Prisons, it does not apply to motions brought by defendants. See Brooker, 976 F.3d 228; United States v. Gunn, 930 F.3d 1178 (7th Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). According to these courts, the Sentencing Commission has not promulgated any policy statement that limits district courts' discretion to grant motions brought by defendants under § 3582(c). See, e.g., Brooker, 976 F.3d at 237. If that is right, district courts are neither required to consider whether the defendant is a danger to the community under

3

U.S.S.G. § 1B1.13(2) nor limited to recognizing only those "extraordinary and compelling" circumstances enumerated by the Sentencing Commission in U.S.S.G. § 1B1.13 cmt n.1. Other courts have disagreed, holding that U.S.S.C. § 1B1.13 controls to the extent it does not squarely conflict with § 3582(c)(1)(A), as amended by the First Step Act. See, e.g., United States v. Lynn, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019).

Today, the Court need not resolve whether the Sentencing Commission's policy statement applies to motions brought by defendants. Even if the policy statement applies only to motions brought by the Director of the Bureau of Prisons, the Court presently agrees with the policy statement's definition of "extraordinary and compelling reasons" and the policy statement's guidance that people who present a danger to the community should not be granted compassionate release.

First, the Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence all relate to a defendant's individual characteristics or conditions—that is, some combination of the defendant's health, age, and family situation. See U.S.S.G. § 1B1.13 cmt n.1. For example, if the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or "a serious physical or mental condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," the "extraordinary and compelling reasons" standard is satisfied. See U.S.S.G. § 1B1.13 cmt. n.1(A)(i)(i)–(ii). The standard is also satisfied if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less," U.S.S.G. § 1B1.13 cmt. n.1(B), or in certain circumstances requiring the defendant to care for minor children or a spouse or registered partner, id. § 1B1.13 cmt. n.1(C). Finally, the standard is satisfied if, "[a]s determined by

4

the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above-described circumstances. U.S.S.G. § 1B1.13 cmt. n.1(D).

The Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence are sensible. Although a future motion could conceivably persuade the Court that these circumstances fail to capture the full range of "extraordinary and compelling reasons" to reduce a sentence under § 3582(c)(1)(A), the Court is yet to encounter such a motion.

Second, as discussed above, the Sentencing Commission has directed that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g), in turn, requires courts to "take into account" four factors when determining the defendant's dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

This framework is also sensible. Indeed, the Court would not exercise its discretion under § 3582(c)(1)(A) to grant relief to a defendant that the Court determines is a danger to the community. Thus, even if permitted, the Court sees no reason to deviate from the policy statement's dangerousness requirement, which ensures that the Court carefully weighs the public's interest in safety before reducing a defendant's sentence.

As to both aspects of the policy statement, the Court also presently finds that it would be illogical to apply a stricter standard to motions brought by the Director of the Bureau of Prisons than to motions brought by defendants. No one disputes that the Sentencing Commission's policy statement continues to apply to motions brought by the Director of the Bureau of Prisons. See, e.g., Brooker, 976 F.3d at 235. The Court declines to approach motions brought by the government seeking a defendant's release on behalf of

a defendant with more scrutiny than motions brought by defendants seeking their own release. Thus, the Court continues to rely on the policy statement as establishing helpful objective guideposts for evaluating whether a defendant should be granted compassionate release under § 3582(c)(1)(A).

### III. DISCUSSION

The Court denies Mr. Rekhi's motion for a reduced sentence because Mr. Rekhi has not shown extraordinary and compelling reasons to reduce his sentence and the factors set forth in 18 U.S.C. § 3553(a) do not support reducing his sentence.

Mr. Rekhi has satisfied the statute's exhaustion requirement such that the Court may decide his motion on the merits. Although not yet in custody, Mr. Rekhi applied for release on October 15, 2020 and did not receive a response. See Mot. at 11. The Court has previously noted that the statute does not expressly or implicitly require movants to be in custody. United States v. Hussain, No. 16-cr-462-CRB-1, 2020 WL 5910065, at *3 (N.D. Cal. Oct. 6, 2020). The parties agree on this point—and also agree that the Court should address the merits of Mr. Rekhi's motion. See Mot. at 11; Opp. (dkt. 40) at 4.[1]

That said, Mr. Rekhi has not shown that "extraordinary and compelling reasons" warrant a reduced sentence. Mr. Rekhi bases his motion on his "pre-existing health conditions of hypertension, obesity, hypercholesterolemia, and sleep apnea," which he argues make him "among those most at risk of serious illness or death if he is exposed to coronavirus while in custody." Mot. at 15. But while serious instances of these conditions could put an inmate at heightened risk during the pandemic, the available medical evidence does not establish that Mr. Rekhi, an overweight 41-year-old, is at such risk.

First, Mr. Rekhi's has not shown that his hypertension is severe or uncontrolled. CDC guidance suggests that people with common hypertension "might be at an increased

---

[1] The government argues that the exhaustion requirements are inapplicable to Mr. Rekhi because he is not yet in custody. See Opp. at 4. Whether Mr. Rekhi is not subject to the exhaustion requirement or Mr. Rekhi has necessarily exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf because he lacks any such rights while out of custody, exhaustion is not an issue here.

risk for severe illness from the virus that causes COVID-19." See CDC, "People with Certain Medical Conditions," updated Feb. 3, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last visited Feb. 3, 2021). By contrast, pulmonary hypertension is a recognized risk factor. Id. Here, Mr. Rekhi has submitted under seal a letter from a doctor who has reviewed his medical records. That letter provides scant detail regarding Mr. Rekhi's hypertension; it says only that Mr. Rekhi has hypertension, that Mr. Rekhi takes medication for his hypertension, and that the doctor is unable to tell how well Mr. Rekhi's "BP [Blood Pressure] is controlled." Given the CDC's uncertain guidance regarding common hypertension and the lack of detail Mr. Rekhi has provided, the Court is unable to conclude that Mr. Rekhi's hypertension puts him at serious risk.

Second, Mr. Rekhi's weight is below the threshold that would justify a finding of heightened risk. The CDC has advised that obesity (a body mass index (BMI) above 30), and particularly severe obesity (a BMI above 40), are risk factors. Id. By contrast, having a BMI between 25 and 30 "might" increase the risk of serious illness. Id. Here, Mr. Rekhi's doctor's letter cryptically states that Mr. Rekhi has a BMI "greater than 29." And Mr. Rekhi does not dispute the government's contentions that his actual medical records show that his BMI has varied between 23 and 29.77 over time, and that Mr. Rekhi's latest known BMI was 27.9. See Opp. at 11; Reply (dkt. 41) at 3. Thus, Mr. Rekhi is overweight but not obese.

Mr. Rekhi has not presented other grounds to conclude that contracting COVID-19 would put him at heightened risk of serious illness. He cites his high cholesterol and sleep apnea, but the CDC recognizes neither as independent risk factors. See CDC, "People with Certain Medical Conditions," updated Feb. 3, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions. Although Mr. Rekhi's doctor states that Mr. Rekhi's cholesterol makes him "prone" to heart disease, he does not have heart disease or

cite any other recognized risk factor.

The current situation at FCI-Sheridan reinforces the Court's conclusion that Mr. Rekhi has not shown extraordinary and compelling reasons for a reduced sentence. In mid-January 2021, FCI-Sheridan inmates and staff began receiving vaccinations. And although infection rates may change over time, as of February 4, 2021, seven inmates out of 1,407 are infected with the virus. See BOP, "Covid-19 Cases," updated Feb. 4, 2021, available at https://www.bop.gov/coronavirus/ (last visited Feb. 4, 2021); BOP, "FCI Sheridan," available at https://www.bop.gov/locations/institutions/she/ (last visited Feb. 3, 2021). The Court is unaware whether any of these seven inmates are housed at FCI-Sheridan's minimum-security camp where Mr. Rekhi will serve his sentence. The government avers that as of January 21, 2021, there were no confirmed cases at the minimum-security camp. See Opp. at 15. All of this is to say that while the spread of COVID-19 in federal prisons is a serious problem, and the relevant data could change quickly, the situation at Mr. Rekhi's specific facility is not dire.

Leaving aside whether Mr. Rekhi has shown extraordinary and compelling reasons for a reduced sentence, the factors set forth in 18 U.S.C. § 3553(a) do not support granting Mr. Rekhi's motion. Section 3553(a) requires a court to consider various factors, including but not limited to

> (2) the need for the sentence imposed—
>    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B)   to afford adequate deterrence to criminal conduct;
>    (C)   to protect the public from further crimes of the defendant; and
>    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Court weighed these considerations when sentencing Mr. Rekhi to 18 months imprisonment followed by three years of supervised release. See Judgment at 2–3. To date, Mr. Rekhi has not served any time in custody. Reducing his sentence or modifying it to a term of home confinement would not reflect the seriousness

8

of his offense or deter Mr. Rekhi and others from engaging in the sort of criminal conduct at issue here.

Because the court determines that Mr. Rekhi has not shown that "extraordinary and compelling reasons" warrant reducing his sentence, and that the § 3553(a) factors do not support reducing his sentence, the Court need not consider whether Mr. Rekhi is a danger to the community. Mr. Rekhi fails to satisfy the criteria for a reduced sentence under § 3582(c)(1)(A). The Court also declines to postpone Mr. Rekhi's surrender date given that Mr. Rekhi has (1) not requested such relief, and (2) complained that his surrender date might "keep being pushed into the future." Mot. at 1.[2]

## IV. CONCLUSION

For the foregoing reasons, Mr. Rekhi's motion for a reduced sentence is denied.

**IT IS SO ORDERED.**

Dated: February 4, 2021

CHARLES R. BREYER
United States District Judge

---

[2] The Court notes that although Mr. Rekhi's sentencing hearing was continued twice, Mr. Rekhi's surrender date has been delayed just once, as a result of Mr. Rekhi's stipulation to that delay.